IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

CAROLE JUERGENS,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-0132

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.    Juergens' Education and Employment Background . . . . . . . . . . . 5
    B.    Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . 5
        1.    Juergens' Testimony . . . . . . . . . . . . . . . . . . . . . . . 5
        2.    Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . 5
    C.    Juergens' Medical History . . . . . . . . . . . . . . . . . . . . . . . 6

IV.    CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . 8
    A.    ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . 8
    B.    Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . 11
        1.    Credibility Determination . . . . . . . . . . . . . . . . . . . 11
        2.    Dr. O'Brien's Opinions . . . . . . . . . . . . . . . . . . . . 15
        3.    RFC Assessment . . . . . . . . . . . . . . . . . . . . . . . . 18
    C.    Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.    ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Carole Juergens on December 19, 2014, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1] Juergens asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits.[2]

---

[1] On January 6, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

[2] In his decision, the Administrative Law Judge ("ALJ") explains that:

> The record includes a prior Administrative Law Judge decision dated March 8, 2006 (the draft decision carries an apparently erroneous date of March 8, 2008 (Exhibit B-1A). [Juergens] later filed an application for benefits under Title II and XVI of the Act on August 24, 2006, which were denied on September 7, 2006. The deadline for applying to reopen those applications has expired, and the determinations on [Juergens'] prior Title II/XVI application[s] are not reopened or revised. Accordingly, the relevant timeframe in this case is from September 8, 2006 through March 31, 2008 [(Juergens' date last insured)].

Administrative Record at 21. The Commissioner agrees with the ALJ's determination of the relevant time frame for this case. *See* Commissioner's Brief (docket number 16) at 4, n.1 and 2. Juergens disagrees with the ALJ's findings and the Commissioner's brief. In her reply brief, Juergens asserts:

> Defendant's assertion is based on a Social Security printout which purports to identify a filing date on a new claim of August 24, 2006 which was denied on September 7, 2006. However, this printout states that the basis of that denial was "Recipient's countable income exceeds title XVI FBR and OSS if applicable." This rationale indicates that the claim was a Title XVI (SSI) claim, and was denied based on excess income or resources, and no disability finding was made.

(continued...)

In the alternative, Juergens requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

---

[2](...continued)

Juergens' Reply Brief (docket number 19) at 2. The Court agrees with the ALJ and Commissioner. Evidence in the record shows that Juergens filed both Title II and Title XVI claims on August 24, 2006, and both claims were denied initially on September 7, 2006. Neither claim was appealed for reconsideration. Therefore, Juergens' argument is misplaced, as there are denials for both a Title II and Title XVI claim on September 7, 2006. Accordingly, the Court considers the relevant time period for this matter to be between September 8, 2006 and March 31, 2008, Juergens' date last insured.

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may

4

not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTS

### A. Juergens' Education and Employment Background

Juergens was born in 1968. She is a high school graduate, and attended one year of college. In the past, Juergens worked as a sales representative for a hotel, legal secretary, legal assistant, and medical secretary.

### B. Administrative Hearing Testimony

#### 1. Juergens' Testimony

At the administrative hearing, Juergens testified that her primary complaint was low back pain. She stated that due to constant pain, she needed to change positions frequently. She was prescribed pain medication, which caused tiredness and drowsiness, and failed to significantly relieve her pain. Juergens also had a diagnosis of fibromyalgia, with pain primarily in her chest and upper extremities. Juergens testified that her fibromyalgia caused her fatigue. Juergens indicated that standing, riding in a car, and performing housework made her pain worse.

#### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for a person who is capable of:

> performing sedentary work . . . and who can occasionally climb, balance, stoop, kneel, crouch, and crawl, cannot climb ladders, ropes, and scaffolds[.] . . .

(Administrative Record at 57.) The vocational expert testified that under such limitations, Juergens could perform her past relevant work as a sales representative, legal secretary, legal assistant, or medical secretary. The ALJ asked a second hypothetical that was identical to the first hypothetical, except that the individual would also "need to rise every

30 minutes for a few minutes standing next to . . . the workstation . . . for, you know, a minute, maybe two, and then sit down again."[3] The vocational expert testified that under such limitations it would be "conceivable" that Juergens could perform her past relevant work as set forth in hypothetical one. Finally, the ALJ inquired:

> Q: Okay. If the person would need -- any of the hypos I just gave, would need to lie down during the day and recline back with their feet up for say a couple of times a day for 30 minutes or so at unscheduled times, would that affect the ability to work?
> A: Those jobs would not be available.
> Q: Would anything else be available?
> A: No.

(Administrative Record at 58.)

### C. Juergens' Medical History

In mid-2005, Juergens was having difficulty with "significant" back and leg pain. An MRI revealed a herniated intervertebral disc at L5-S1. Juergens underwent back surgery on August 19, 2005. The surgery was performed by Dr. Loren J. Mouw, M.D.

On March 10, 2006, Juergens was referred to the University of Iowa Hospitals and Clinics ("UIHC"), where she met with Dr. Chris J. Van Hofwegen, M.D., regarding continued low back pain with radicular type symptoms after her August 2005 back surgery. Juergens described her back pain as continuous and "extremely bothersome." She also complained of left leg pain "all of the time," with numbness and tingling and weakness. Juergens reported that her pain: (1) prevents her from lifting heavy objects; (2) prevents her from walking more than 10 minutes; (3) prevents her from sitting more than 30 minutes; (4) prevents her from standing more than one hour; and (5) often interrupts her sleep. Upon examination, Dr. Van Hofwegen diagnosed Juergens with persistent low

---

[3] Administrative Record at 57.

back pain. Dr. Van Hofwegen recommended a nerve root injection and sleep counselor as treatment.

On August 9, 2006, Juergens returned to the UIHC, and met with Dr. Joseph J. Chen, M.D., for a spine rehabilitation evaluation. In reviewing Juergens' medical history, Dr. Chen noted that:

> Ms. Juergens reported that she feels worthless as a mother and wife, she feels disappointed regarding her weight gain and has a lack of interest in participating in activities due to her pain. She stated that she does not enjoy her life as much now as in the past because of her pain and accompanying physical limitations. She stated she feels discouraged about the future and is particularly concerned about her ability to be an active mother and about future employment.

> She indicated sleep disturbance due to pain and reports that she wakes up frequently. She reported that pain and accompanying stress interfere with her ability to concentrate and negatively impact her level of motivation. . . .

> She currently manages her pain by taking medication and resting. She stated her goal is to learn to manage her pain, become active as a mother and return to work outside of the home.

(Administrative Record at 715.) Upon examination, Dr. Chen opined that Juergens' low back and leg pain were primarily soft tissue, muscular pain. Dr. Chen indicated that Juergens' type of pain "can be very frustrating and uncomfortable, but does not require surgery, injections or other invasive procedures. It can improve with a strong commitment to solid home program of increased physical activity and use of pain management tools."[4] Dr. Chen recommended engaging in home physical therapy, psychological relaxation, coping skills, and participating in the UIHC's two week spine rehabilitation program.

---

[4] Administrative Record at 719.

On July 11, 2007, Juergens underwent an MRI of her lumbar spine. She continued to have back pain and left leg pain. The MRI revealed post-surgical changes on the left at L5-S1, disc space narrowing at L5-S1, large left paracentral disc herniation at L5-S1 with S1 nerve root compression, and scar tissue present at L5-S1. Back surgery was recommended to treat left L5-S1 disc herniation. On July 19, 2007, Juergens underwent a left L5-S1 diskectomy.

On May 26, 2011, Juergens' long-time treating physician, Dr. Tammy A. O'Brien, M.D., wrote a letter offering her opinion on the reasons for Juergens being unable to work over the past several years. Dr. O'Brien opined that:

> [Juergens] developed problems with degenerative disc disease in May of 2003 during the middle of a pregnancy. She has had two surgeries for disc herniations, one in 2005 and one in 2007. She unfortunately has developed scar tissue at the site[] of one of her surgeries that puts continual pressure on nerves in her leg. Through the years she has worked with physical therapy and the pain clinic, as well as taken regular medications to try to control this pain. She gets some relief from these measures, but none is long standing. None of these treatments relieve her pain to the point where she can do one thing for an extended time. Even after doing simple household jobs such as washing dishes she needs to rest due to pain in her back and legs. She is unable to sit for prolonged periods of time either. She is unable to lift more than just a few pounds, as that exacerbates her pain also. Because of these limitations it has been impossible for [Juergens] to work at either an active job or a sitting job over the past few years.

(Administrative Record at 488.)

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Juergens was not disabled at any time from May 9, 2003, her alleged onset date, through March 31, 2008, Juergens' date last insured. In making this determination, the ALJ was required to complete the five-step sequential test provided

in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Juergens had not engaged in substantial gainful activity during the time period of May 9, 2003 (her alleged disability onset date) through March 31, 2008 (her date last insured). At the second step, the ALJ concluded from the medical evidence that Juergens had the following severe impairments through her date last insured: degenerative disc disease status post surgery in August 2005 and July 2007, fibromyalgia by history, and obesity. At the third step, during the relevant time period, the ALJ found that Juergens did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Juergens' RFC through the date last insured as follows:

> [Juergens] had the residual functional capacity to perform
> sedentary work[.] . . . She can occasionally lift and carry up

> to 10 pounds, and 5 pounds frequently. [She] was able to occasionally climb, balance, stoop, kneel, crouch and crawl but could not work on ropes, ladders or scaffolds. She would have needed to rise every 30 minutes for a minute or two at her workstation.

(Administrative Record at 20.) Also at the fourth step, the ALJ determined that through the date last insured, Juergens was capable of performing her past relevant work as a sales representative in hotel services, legal secretary, legal assistant, and medical secretary. Therefore, the ALJ concluded that Juergens was not disabled.

### B. Objections Raised By Claimant

Juergens argues that the ALJ erred in three respects. First, Juergens argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Second, Juergens argues that the ALJ failed to properly evaluate the opinions of her long-time treating physician, Dr. O'Brien. Lastly, Juergens argues that the ALJ's RFC assessment is not supported by substantial evidence.

### 1. Credibility Determination

Juergens argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Juergens maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Juergens' testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a

11

claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d

1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ generally determined that:

> After careful consideration of the evidence, the undersigned finds that [Juergens'] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Juergens'] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons explained in this decision.

(Administrative Record at 21.) The ALJ further stated that:

> To the extent that [Juergens] alleges disability and that she was precluded from all work activity prior to March 31, 2008, [Juergens] is not a credible witness. Some of the records during the relevant timeframe and beyond reference pregnancies and other OB/GYN issues. In fact, the record indicates that [Juergens] delivered babies in 1998, 1999 and 2003, underwent a laparoscopy with cyst removal and has undergone a hysterectomy. Therefore, it appears that one of the reasons she was not working is that she was caring for her children. [Juergens] has a rather poor work record. [Juergens] was not disabled as defined by the Social Security Regulations and should have been able to perform work activity within the residual functional capacity findings of the undersigned.

(Administrative Record at 24.)

In his decision, the ALJ sets forth the law for making a credibility determination under the Social Security Regulations.[5] The ALJ failed to apply the law, however, in determining the credibility of Juergens' testimony and subjective allegations. Specifically, the Court finds that the ALJ's decision lacks the required detail for discrediting a claimant and explaining the inconsistencies between the claimant's subjective allegations and the record as a whole. *See Renstrom*, 680 F.3d at 1066; *Ford*, 518 F.3d at 982; *see also*

---

[5] *See* Administrative Record at 21.

*Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). The ALJ offers nothing in terms of the *Polaski* factors and how those factors relate to Juergens' subjective testimony and credibility. The ALJ simply states that Juergens' "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[6] The ALJ's decision provides no reasons for discounting Juergens' testimony other than an unfounded assumption that Juergens stopped working to care for her children. *See Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). In her brief, Juergens correctly points out that:

> the ALJ based his opinion that Ms. Juergens would rather stay home with her children solely on the fact that she had "delivered babies" and "has undergone a hysterectomy. . . ."
>
> Her earnings records show steady earnings at part or full time levels from 1993-2003. R. 198. She continued to work after the birth of her first two children in 1998 and 1999. Her medical records show that she developed severe back pain for the first time in May of 2003, while she was pregnant with her third child. . . . Thus, the ALJ's inference that Ms. Juergens stopped working to take care of her children is contrary to her medical records and her work history, which show that she was able to work, despite having children, until her back pain developed in 2003.

Juergens' Brief (docket number 13) at 21-22. The Court agrees with Juergens, and finds the ALJ's sole reason for discounting Juergens' credibility to be inadequate.

Because the ALJ's decision lacks any discussion of the reasons for discrediting Juergens, except that her allegations are not entirely credible, and lacks full consideration of *Polaski* or any of the *Polaski* factors, the Court finds that remand is appropriate for the ALJ to further develop the record with regard to Juergens' credibility. On remand, the ALJ shall set forth in detail his reasons for finding Juergens' subjective allegations to be

---

[6] *Id.*

credible or not credible. If on remand, the ALJ finds Juergens' testimony not to be credible, the ALJ shall fully explain the reasons for his credibility determination and fully explain the inconsistencies between Juergens' subjective allegations and the evidence in the record.

## 2. Dr. O'Brien's Opinions

Juergens argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. O'Brien. Specifically, Juergens argues that the ALJ failed to properly weigh Dr. O'Brien's opinions. Juergens also argues that the ALJ's reasons for discounting Dr. O'Brien's opinions are not supported by substantial evidence in the record. Juergens concludes that this matter should be remanded for further consideration of Dr. O'Brien's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and

examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed the opinions found in Dr. O'Brien's 2011 letter:

> To the extent that this letter would support a finding of disability prior to March 31, 2008, it is not given significant weight. The phrase "over the past few years" is very vague as to a time when [Juergens] was unable to work. Dr. O'Brien is not her back surgeon and the opinion is not supported by objective medical evidence. A lumbar MRI performed on November 11, 2010 revealed the following:

> Postsurgical changes on the left at L5-S1 level. There is scar tissue later to the thecal sac at the left on the L5-S1 level that is adjacent to the left S1 nerve root. There is also a left lateral disk bulge extending into the neuro foramen suggesting a disk protrusion which may cause mild compression of the exiting left L5 nerve root. Disk space narrowing is also present at the L5-S1 level. . . .

> These findings suggest a limitation to more sedentary activities, due to pain.

(Administrative Record at 24.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds the ALJ has not fully met these requirements. Here, Dr. O'Brien opined that:

> [Juergens] developed problems with degenerative disc disease in May of 2003 during the middle of a pregnancy. She has had two surgeries for disc herniations, one in 2005 and one in 2007. She unfortunately has developed scar tissue at the site[] of one of her surgeries that puts continual pressure on nerves in her leg. Through the years she has worked with physical therapy and the pain clinic, as well as taken regular medications to try to control this pain. She gets some relief from these measures, but none is long standing. None of these treatments relieve her pain to the point where she can do one thing for an extended time. Even after doing simple household jobs such as washing dishes she needs to rest due to pain in her back and legs. She is unable to sit for prolonged periods of time either. She is unable to lift more than just a few pounds,

> as that exacerbates her pain also. Because of these limitations it has been impossible for [Juergens] to work at either an active job or a sitting job over the past few years.

(Administrative Record at 488.) While, Dr. O'Brien's use of "over the past few years" may be somewhat vague, it appears clear from her letter that Dr. O'Brien's opinions were based on Juergens' developing back pain in 2003, having two back surgeries in 2005 and 2007, and her treatment during and after her back surgeries. Furthermore, Dr. O'Brien is Juergens' long-standing primary care physician, and while she did not perform Juergens' back surgeries, she treated Juergens for back pain during the relevant time period. Moreover, the ALJ's primary reason for discounting Dr. O'Brien's opinion is the ALJ's own impression of an MRI from 2010, or two years after Juergens' date last insured. The ALJ does not address the opinion or findings of the doctor who performed the MRI. The Court further finds that the ALJ is inconsistent in criticizing Dr. O'Brien for being vague with regard to the time period associated with Juergens' low back pain, while using an MRI from over two years past the relevant time period (November 2010) to discount Dr. O'Brien's opinions. Therefore, under such circumstances, the Court finds the ALJ's reason for discounting the opinions of Dr. O'Brien to be inadequate under the regulations. *See* 20 C.F.R. § 404.1527(d)(2) (requiring an ALJ to give "good reasons" for rejecting the opinions of a treating medical source). On remand, the ALJ must further consider Dr. O'Brien's opinions, and fully and fairly develop the record with regard to Dr. O'Brien's opinions.

### 3.    *RFC Assessment*

Juergens argues that the ALJ's RFC assessment is flawed. Specifically, Juergens argues that the ALJ's RFC assessment is incomplete because it does not properly account for all of her impairments and functional limitations. Juergens also argues that the ALJ's RFC assessment is not supported by substantial evidence in the record. Juergens maintains

that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In sections *IV.B.1* and *IV.B.2*, the Court determined that remand was necessary because the ALJ failed to properly evaluate Juergens' credibility, and failed to fully and fairly develop the record with regard to the opinions of Dr. O'Brien. Because the ALJ did not properly evaluate Juergens' subjective allegations of pain and disability or fully and fairly develop the record with regard to Dr. O'Brien's opinions, the Court finds that the ALJ's RFC assessment is not based on all of the relevant evidence. *See Guilliams*, 393 F.3d at 803. Accordingly, the Court determines that remand is necessary to allow the ALJ to make his RFC assessment for Juergens based on all the relevant evidence, including the opinions of Dr. O'Brien and a proper credibility determination.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) properly evaluate Juergens'

credibility; (2) fully and fairly develop the record with regard to the opinions of Dr. O'Brien; and (3) base his determination of Juergens' RFC on all the relevant evidence.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must consider all of the evidence relating to Juergens' subjective allegations of disability, and address his reasons for crediting or discrediting those allegations. The ALJ shall also provide clear reasons for accepting or rejecting Dr. O'Brien's opinions and support his reasons with evidence from the record. Finally, the ALJ must also make his RFC determination based on all the relevant evidence, again, including the opinions of Dr. O'Brien and a proper evaluation of Juergens' subjective allegations of pain and disability.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 24th day of November, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA